UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MARIA DOMINIQUE TURNER
other
MARIA THOMPSON,

    Plaintiff,

v.                                  CASE NO. 5:20cv199-MCR-MJF

ZACHARY WESTER,
LOUIS S ROBERTS, III,

    Defendants.
_____/

## ORDER

Plaintiff Maria Dominique Turner, now known as Maria Thompson ("Thompson"), filed this civil rights suit against Defendant Louis S. Roberts, III, individually and in his official capacity as Sheriff of Jackson County, Florida, and Defendant Zachary Wester, a former deputy sheriff, individually. Thompson alleges that Wester, while acting as a deputy sheriff, fabricated evidence and criminal charges against her, and she asserts several causes of action against each Defendant arising under state law and federal constitutional law, *see* 42 U.S.C. § 1983. Now pending is Defendant Roberts's Motion to Dismiss the Second Amended Complaint, addressing the individual capacity claims against him, ECF No. 21, and his Motion to Strike and/or Dismiss Plaintiff's Claims for Punitive Damages, ECF No. 22.

Thompson opposes both motions. Having fully considered the matter, the Court denies the motion to dismiss the individual capacity claims and grants in part and denies in part the motion to strike.

**Background**

Viewing the allegations of the complaint as true, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), on July 14, 2017, Thompson was operating a vehicle owned by her fiancé (now husband), James Thompson, on Highway 90 in Cypress, Florida, when she was pulled over by Deputy Wester for no reason. He had been driving in the opposite direction. He made a U-turn after going past her and turned on his emergency lights behind her. Thompson pulled over but asserts that Wester had no basis to believe she had committed any traffic offense, let alone a crime. The Complaint alleges that Wester approached her driver-side window and announced that he pulled her over because, "as I passed you, I smelled the aroma of marijuana." ECF No. 15, at 3. Thompson asserts this was false, and when she informed him she had not smoked marijuana, Wester slapped the window frame and said, "I know somebody has been smoking marijuana in this truck today. I got a call about it." *Id.* at 4. Thompson asserts this was also false as she had been at work all day. Thompson informed Wester that she was on probation, was drug tested regularly, and did not use illegal drugs.

Wester allegedly took Thompson's driver's license and returned to his police vehicle. When he returned to Thompson, he informed her that her license was suspended for unpaid child support, which she also contends was false. He also stated that her tags were expired. Wester placed Thompson in the back seat of his police vehicle, purportedly for her safety, and said he would call her probation officer to determine whether she could be let off with a warning. He then searched her vehicle under the pretense that he had smelled the odor of marijuana, which, again, Thompson asserts was false.

Wester searched the vehicle and falsely claimed that he found a "white in color crystal substance." *Id.* at 5. According to the Complaint, Wester did not find the substance in Thompson's vehicle but instead brought the substance to her vehicle and also falsely claimed to have performed a field test revealing it to be methamphetamine. He also falsely claimed to have found a "color Ziploc bag containing a green leafy residue," which he identified as marijuana. Thompson alleges that he then typed up an affidavit from the police vehicle, which took over two hours. Wester arrested Thompson for possession of methamphetamine and drug paraphernalia and took her to the Jackson County Jail. She was charged with possession of methamphetamine, possession of drug paraphernalia, driving with a suspended license with knowledge, and violation of state probation.

CASE NO. 5:20cv199-MCR-MJF

Thompson maintained that Wester had no probable cause to arrest or charge her and no reasonable basis to believe that he did because he planted false evidence. She was held in jail and felt forced to enter a plea of no contest on August 31, 2017. She was sentenced to a term of 21 days in the county jail, one year of community service, two years of Drug Offender Probation, and assessed $1,100 in court costs. Thompson was released from jail on September 21, 2017. Her former employer complained to Wester's immediate supervisor and was told that Wester was "a good ole boy and if he said something happened then that's what happened," and nothing was done. ECF No. 15 at 9. It is further alleged that on September 20, 2018, after the Florida Department of Law Enforcement had tested the white substance and determined that no controlled substances were found, Thompson was allowed to withdraw her plea agreement, and her sentence was vacated.

It is also alleged that during his career with the Jackson County Sheriff's office, Wester made over 100 arrests that have been subsequently determined to be false. His arrest rate was "more prolific than the arrest rate of any other deputy," and it is alleged that because Wester's drug arrest rate was so inflated, his supervisors, including Roberts, could not have believed he was acting lawfully. Thompson also alleges that multiple people complained, but Roberts continued to allow Wester to make false arrests and ignored the complaints. Thompson lists over

CASE NO. 5:20cv199-MCR-MJF

30 civil suits filed against Wester on the same grounds of false arrest and falsified evidence. Thompson contends that Wester's conduct was widespread and was permitted to continue, consistent with the customs, policy and practice of the Jackson County Sheriff's Office. It is further alleged that Roberts knew of, approved of, and expressly and implicitly authorized Wester's conduct with respect to Thompson.

Roberts moves to dismiss the claims against him in his individual capacity for the failure to state a claim or on grounds of qualified immunity. Roberts also seeks to strike the claims for punitive damages and attorney's fees asserted against him in his official and individual capacities.

**Discussion**

    **A.**    **Motion to Dismiss**

A complaint must "include sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)), and if not, the complaint is subject to dismissal. *See* Fed. R. Civ. P. 12(b)(6). Federal pleading rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not detailed allegations. *See Iqbal*, 556 U.S. at 677–78. The "plausibility standard" requires a showing of "more than a sheer possibility" that the defendant is liable on the claim. *Id.* The plaintiff must show

enough factual content to raise the asserted right to relief above the level of speculation, but legal conclusions are not accepted as true. *See id.; Twombly*, 550 U.S. at 555. Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Qualified immunity shields a public official from individual liability for damages arising out of the official's performance of discretionary duties, unless the official's conduct violated clearly established constitutional rights of which a reasonable official should have known. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The government official bears the initial burden of raising the defense and "showing 'he was acting within his discretionary authority.'" *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1293 (11th Cir. 2018) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). If the government official was acting within the scope of his discretionary authority, then the burden shifts to the plaintiff to establish: (1) that the allegedly wrongful conduct violated a constitutional right, and (2) that the right at issue was clearly established at the time the alleged misconduct occurred. *See Gilmore v. Hodges,* 738 F.3d 266, 272 (11th Cir. 2013) (citing *Pearson v. Callahan,* 555 U.S. 223, 232 (2009)). Addressing the qualified immunity inquiry in this order

is no longer required, and courts may exercise discretion to decide which inquiry to address first in light of the circumstances of a particular case. *Id.* (citing *Pearson*, 555 U.S. at 232). Because qualified immunity is a defense from suit as well as liability, courts are instructed to "ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Id*.

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). However, they may be liable individually for their own misconduct. *Iqbal*, 556 U.S. at 676-77 (noting the term "supervisory liability" is a misnomer in the context where supervisors may not be held liable for the misdeeds of their agents or subordinates). Actionable misconduct occurs where the supervisor "personally participate[d] in the alleged constitutional violation" or where "there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Keating*, 598 F.3d at 762. In the absence of personal participation, the causal connection can be shown where a supervisor's policy or custom results in deliberate indifference to constitutional rights, or where "the facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone v. Jenne*, 326 F.3d 1352,

CASE NO. 5:20cv199-MCR-MJF

1360 (11th Cir. 2003) (internal marks omitted).  To demonstrate causation through custom requires a showing that the supervisor was on notice of a "history of widespread abuse"—one that was "obvious, flagrant, rampant and of continued duration"—sufficient to put a "responsible supervisor" on notice of the need to correct the alleged constitutional deprivations and the failure to do so.  *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010); *see also Cottone,* 326 F.3d at 1360.

Roberts argues that Thompson failed to allege a plausible, non-conclusory factual basis to show either his personal involvement or knowledge.  The Court disagrees.  The Second Amended Complaint alleges that Wester made over 100 false arrests and lists 30-some civil cases similar to Thompson's, which demonstrates widespread abuse.[1]  It further alleges that Roberts knew of Wester's misconduct, because of having received complaints and having had notice of his "prolific" record of arrests, and that Roberts acquiesced in and declined to prevent the misconduct.  Some allegations are conclusory in nature, but on the whole, taken as true, there are

---

[1] The Court takes judicial notice that the arrests in several of the cases listed in the Complaint are alleged to have occurred on a date prior to Thompson's arrest. *See Grayson v. Warden, Comm'r, Alabama Doc*, 869 F.3d 1204, 1225 (11th Cir. 2017) (noting that a court may take judicial notice of filings in other litigation).

sufficient factual assertions to raise a plausible inference that Roberts was on notice of the misconduct and either failed to correct it or acquiesced in it. Heightened pleading is not required. *See Randall v. Scott,* 610 F.3d 701, 710 (11th Cir. 2010);[2] *see also* Fed. R. Civ. P. 9(b) (knowledge need not be pled with particularity). Also, although "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous," *Cottone*, 326 F.3d at 1360 (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)), that is a standard of proof, not pleading. The allegations are sufficient to state a claim.

For the same reason, qualified immunity must be denied at this stage. Assuming the facts alleged as true and inferences in Thompson's favor, Roberts's conduct of failing to take action while on notice of, and having received complaints of, Wester's widespread misconduct caused the violation of Thompson's constitutional rights to be free from an unreasonable search and seizure. And, Roberts does not argue that supervisory liability based on such a causal connection was not clearly established. Because the Second Amended Complaint sufficiently alleges the violation of clearly established constitutional rights, qualified immunity

---

[2] In *Randall*, the Eleventh Circuit held and has since reaffirmed, "that 'whatever requirements our heightened pleading standard once imposed have since been replaced by those of the *Twombly–Iqbal* plausibility standard. . . . [which] applies to *all* civil actions. . . .'" *Hoefling v. City of Miami*, 811 F.3d 1271, 1276 (11th Cir. 2016) (quoting *Randall*, 610 F.3d 701, 707 n.2).

CASE NO. 5:20cv199-MCR-MJF

must be denied at this stage. The issue may be raised again on a fully developed record.

B.     **Motion to Strike**

Roberts seeks to strike or dismiss all claims for punitive damages and attorney's fees asserted against him in his official and individual capacities, as alleged in the following Counts:

- II (§ 1983 unlawful seizure, individual capacity),
- III (§ 1983 unlawful seizure, official capacity),
- V (§ 1983 unlawful detention, individual capacity),
- VI (§ 1983 unreasonable detention, official capacity),
- VII (§ 1983 unreasonable search, individual capacity),
- IX (§ 1983 unreasonable search official capacity),
- XI (§ 1983 excessive force, individual capacity),
- XII (§ 1983 excessive force, official capacity),
- XIV (fabrication of evidence, individual capacity),
- XV (§ 1983 fabrication of evidence, official capacity),
- XVII (§ 1983 false arrest, individual capacity),
- XVIII (§ 1983 false arrest, official capacity),
- XX (§ 1983 malicious prosecution, individual capacity),
- XXI (§ 1983 malicious prosecution, official capacity),
- XXII (state law malicious prosecution, official capacity), and
- XXIII (state law false arrest/false imprisonment official capacity).

Punitive damages may be awarded under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Thompson has alleged that Roberts deliberately

Page 11 of 13

ignored complaints about Wester's unconstitutional conduct and that he knew of the conduct and authorized it or failed to take action to correct it, which caused the violation of Thompson's rights.  Taking the allegations as true, they are sufficient to infer recklessness or callous indifference to Thompson's constitutional rights, and therefore the request for punitive damages on § 1983 claims against in Roberts in his individual capacity will not be stricken.  Thompson agrees that punitive damages may not be recovered under § 1983 on the official capacity claims, so the motion will be granted as to Counts III, VI, IX, XII, XV, XVIII, XXI.

As to punitive damages under state law, Roberts argues, and Thompson agrees, that leave of court under Florida law, Fla. Stat. § 768.72(1), is required before pleading punitive damages, so the pleading of punitive damages is premature.  The Court disagrees and will not dismiss or strike the claims based on an incorrect statement of law (even if undisputed).  The Eleventh Circuit has held that the federal pleading rules within Fed. R. Civ. P. 8(a)(3) (requiring a demand for the relief sought) "preempt § 768.72's requirement that a plaintiff must obtain leave from the court before including a prayer for punitive damages."  *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1340 (11th Cir. 2001); *see also Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1299 (11th Cir. 1999), *aff'd in part and vacated in part on other grounds*, 204 F.3d 1069 (11th Cir. 2000).  Thus, the pleading of damages is governed

by federal rules, and while a *factual* basis is required to state a cause of action, there is no requirement for court approval before pleading punitive damages.  As already concluded, the Second Amended Complaint sufficiently alleges grounds to support a claim for punitive damages, and therefore, the state law punitive damages claims will not be stricken.

Attorney's fees are available to a prevailing party on a § 1983 claim, *see* 42 U.S.C. § 1988(b), but no grounds are asserted that would justify attorney's fees under state law.  Thompson agrees that attorney's fees are only recoverable under §§ 1983 and 1988(b) and that the request should be stricken from the state law claims of Counts XXII and XXIII.

Accordingly:

1.  Defendant Roberts's Individual Motion to Dismiss Plaintiff's Second Amended Complaint, ECF No. 21, is **DENIED**.

2.  Defendant Roberts's Motion to Strike and/or Dismiss Plaintiff's Claims for Punitive Damages and Attorney's Fees, ECF No. 22, is **GRANTED in part** and **DENIED in part**, as follows:

    a.  **GRANTED** as to the § 1983 claims for punitive damages against Roberts in his official capacity, as alleged in Counts III, VI, IX, XII, XV, XVIII, and XXI, which are **STRICKEN**.

CASE NO. 5:20cv199-MCR-MJF

b. **GRANTED** as to the state law claims for attorney's fees, as alleged in Counts XXII and XXIII, which are **STRICKEN**.

c. In all other respects, the motion is **DENIED**.

**DONE AND ORDERED** this 21st day of April 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**